J. Irwin Shapiro, J.
This is an action for rent and for additional rent from July 17,1961 through August 25,1961 pursuant to the terms of a written lease signed by defendant. The complaint contains three causes of action:
(1) For rent of $17,522.40 pursuant to the provisions of paragraphs 3-a and 6 of the lease signed by defendant;
(2) For $318.97 in real estate taxes pursuant to the provisions of paragraph 4 of the lease (this cause of action was withdrawn by plaintiff in its memorandum of law);
(3) For $1,126.58 for insurance premiums for the period from July 17,1961 through August 25,1961 pursuant to the provisions of paragraph 9 of the lease. (The insurance premiums were denominated additional rent by the said paragraph of the lease.)
The answer of defendant denies liability for the rent and additional rent on the theory that defendant had removed from the demised premises all of the property to which defendant had title and had vacated the premises on or before June 30, 1961 (the expiration date of the lease) and that all that remained on the demised premises up to August 25, 1961 was property to which the United States Government had title.
Although upon the trial the plaintiff attempted to create an issue of fact with reference to the defendant’s factual continued *210 possession of the premises it now admits that that is not the case and in its memorandum of law says ‘1 the facts are not in dispute” and “the case involves purely a question of law”.
The facts found by the court follow:
General Bronze Corporation, the defendant herein, is in the business of manufacturing architectural and miscellaneous metal work. In June, 1958 the defendant negotiated a lease with the United States of America through the General Services Administration for the rental of approximately 18 acres of land and 6 buildings in Valley Stream, Long Island for the purpose of manufacturing electronic equipment to be used in the defense of the United States. The defendant entered into a special facilities contract with the United States of America, under which it was permitted to use certain equipment and machinery for this defense work. The expiration date of the lease was June 30, 1961. Under the special facilities contract General Bronze was a bailee only of this property, title remaining in the United States.
In the early part of 1961 General Bronze decided to terminate its defense manufacturing at Valley Stream and to vacate those premises.
In February, 1961 the defendant notified the General Services Administration that it would not renew the lease and that it would vacate the premises on or before the expiration date on June 30,1961.
The defendant tendered the equipment borrowed from the Air Force under its special facilities contract back to the United States of America.
On March 7,1961 defendant received a formal notification from the United States Air Force declaring all equipment owned by the United States at Valley Stream surplus and instructing it to await disposal orders. Milton Salmon, an officer of the defendant, issued instructions and directives to Warren Cook, its property disposal officer, that they were vacating the Valley Stream premises on June 30, 1961 and everything belonging to General Bronze had to be removed from the premises on or before that date. Defendant also issued directives that the various utilities servicing the Valley Stream premises be notified that the premises were being vacated on or before June 30, 1961. Defendant ceased manufacturing activities at Valley Stream early in June, 1961. On the day they took title, July 17, 1961, the plaintiff saw no sign of manufacturing activity.
After deciding not to renew its lease, defendant entered into a special supplemental facilities contract with the United States Air Force to ship and otherwise dispose of the surplus United *211 States Air Force equipment pursuant to the instructions of the Air Force. By June 30,1961 all property belonging to General Bronse had been vacated from Valley Stream premises.
The Air Force officer, Holden, testified that as of June 22,1961 everything belonging to General Bronze had been removed from Valley Stream and the only equipment on the premises belonged to the Air Force.
In March, 1961 the plaintiff became interested in the purchase of the Valley Stream property. It submitted a bid pursuant to an invitation to bid and the bid was duly accepted. By its terms, the invitation to bid and bid and acceptance became the contract of sale. Plaintiff knew there was a clause about Government property in the invitation to bid and also knew that there was Government property on the premises. Plaintiff took title on July 17, 1961. Plaintiff visited the premises before it took title. It had also visited the premises in June, 1961. Plaintiff was aware of what was going on in the premises, and in fact was engaged in negotiating the purchase of property from General Bronze.

After July 17,1961 the defendant’s only activity on the premises was disposing of the Government property under the direction and supervision of the United States Air Force.

On July 18, 1961, one day after taking title, plaintiff sent a letter by certified mail to the United States Air Force demanding rent. Plaintiff made a further demand by letter for rent to the United States Air Force on July 31, 1961 and in none of these letters is mention made of General Bronze as a tenant, although the plaintiff knew of the activities being conducted on the premises.
On August 15, 1961 plaintiff sent a bill by mail addressed to General Services Administration, United States Air Force and General Bronze, in that order, demanding rent.
After July 17, 1961 the United States Air Force conducted sales of Government property on the premises. Checks issued by the purchaser were made to the order of the Treasury of the United States. Solicitation of bids was done under the direction of the United States officer Holden. All bids were opened by the United States officer Holden, as an agent of the Government.
In June of 1961 plaintiff saw 100 employees of General Bronze on the premises. After July 17, 1961 plaintiff saw 3 General Bronze employees.
Plaintiff placed a guard on the premises during the period covered by the complaint. The guard worked 24 hours a day 11 around the clock ”. He slept in a house on the premises. The plaintiff bought him a bed. The plaintiff ’s guard moved into *212 a house on the premises. Plaintiff requested General Bronze employees to clean the house So that plaintiff could move people into the place and they complied. The plaintiff’s guard roamed all over the premises including the area claimed to be occupied by the defendant. The guard used the water and toilet facilities. He had electrical facilities.
Two of the three plaintiff partners and sometimes the third used the premises every day after they took title and spent several hours each day on all portions of the premises. Plaintiff also brought other persons onto the premises, including a surveyor and the man from the title company with regard to a right of way problem.
Plaintiff entered the work area where the Air Force equipment was kept. It took pictures in that area on at least three occasions. Plaintiff entered the premises every day but did not demand rent of the defendant. They entered upon the premises to make a survey of the property to see what they could do to develop it and this is the same activity that they are engaging in today.
From the foregoing it is obvious that (1) the defendant vacated the premises on or before June 30, 1961, (2) that defendant was not a tenant of the plaintiff, (3) that defendant was not in possession of the premises on July 17, 1961, (4) that the services performed on the premises by the defendant after June 30, 1961 were on behalf of the United States of America, and (5) that the possession of the premises for so long as it continued after June 30, 1961 was the possession of the United States of America, the plaintiff’s grantor and not that of the defendant. The invitation to bid (§9) contained a reservation of right for the United States to store and remove material for a period of 120 days after the conveyance to the plaintiff so that its continuing in possession after its conveyance was in accord with its agreement with the plaintiff.
In conclusion, the presence of the defendant on the premises after June 30, 1961 was a different kind of presence than that which existed prior to that date. Until June 30, 1961 it was a tenant of the United States Government. Its tenancy ended on that date by reason of the expiration of the lease and its vacation of the premises prior thereto. Its presence on the premises on July 17, 1961 was not as a tenant but as a contractor with the United States. The analogy urged upon the court by defendant in its memorandum is sound when it says: “ It was as if a painter who had been living in a building and terminated his tenancy, had been hired by the landlord to paint the building after the expiration of the term ”, It could not in such an event *213 be logically contended that the painter, because he was present on the premises to do the painting, had thereby continued his prior tenancy. That is specifically the situation with respect to the defendant’s presence on the premises on and after July 17,1961, the date when plaintiff acquired title to the premises.
For all of the above reasons the plaintiff’s complaint must he dismissed. Upon the trial the court granted judgment to the defendant on its counterclaim in the sum of $5,000, with interest.
The determination of the court, therefore, is that the complaint is dismissed on the merits and judgment is granted to the defendant on its counterclaim, with appropriate interest and costs.